**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **Criminal No. 20-00089-JB** |
| | * | |
| **MARK WAYNE COOPER** | * | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS (Doc. 249)

Comes now the United States, by and through the United States Attorney for the Southern District of Alabama, and responds in opposition to the defendant's abovecaptioned motion as follows:

The defendant's motion seeks to suppress a post-Miranda statement made to the sheriff's deputies on September 11, 2018, at his residence.   The defendant claims that he was intoxicated and therefore his statement was not voluntary.   The deputies obtained the defendant's consent to search his residence during their contact with him, and the defendant further claims that evidence seized during the consent search must also be suppressed for the same reason. Doc. 249 at 2-4, Page ID#790-92.

The motion also seeks to suppress evidence obtained from the defendant on November 14, 2018, which resulted from an investigation relating to the defendant's presence at a location where police had prior reports of trespassing.   As a result of the investigation, the officer conducted a Terry pat and felt contraband in the defendant's pocket.   The defendant was arrested when the drugs in his pocket were removed.   The defendant claims that the seized drug evidence is subject to suppression as are subsequent post-Miranda statements, which he claims

1

were "tainted by the unlawful search and obtained in violation of his 5th and 6th Amendment rights."   Id. at 4-6, Page ID# 792-94.

## I.   September 11, 2018 post-Miranda statement and consent to search

### Anticipated Facts

Based upon a review of the reports of the incident, the Government expects the evidence to show that on July 30, 2018, investigators were conducting surveillance at an apartment on Azalea Road in Mobile, where they suspected that co-defendant Von Clay Bennett, Jr., was staying.   They observed as Bennett left the apartment at 6:10 p.m. driving the white Lexus displaying Alabama tag 9567AW2, which they had previously seen him drive during surveillance of prior drug deals involving Bennett.   Investigators followed the Lexus to a restaurant on the causeway between Mobile and Spanish Fort.   There, Bennett pulled into the parking lot beside a Dodge Ram truck, displaying Alabama tag 8052AZ4.   The vehicle was registered to the defendant, Mark Wayne Cooper, whose address was listed at 15464 Pine Grove Road Extension, in Bay Minette.   Investigators observed the driver of the Dodge truck and Cooper was subsequently identified as that driver.   The investigators observed as Bennett left the Lexus and entered the passenger side of the Dodge truck.   The meeting in the truck lasted only a few minutes and Bennett returned to the Lexus.   Both vehicles departed the parking lot. Bennett drove back to Mobile County.   Cooper drove toward Spanish Fort and surveillance officers discontinued the surveillance.

Later in the investigation, on September 12, 2018, Baldwin County Drug Task Force agents were looking for Bennett's mother at 15464 Pine Grove Road Extension, Bay Minette, to find out whether she had information on the whereabouts of her son.   She was also wanted on

2

active arrest warrants from the sheriff's office.   When they arrived at the mother's address, which was also the address for the defendant Cooper (according to the tag registration on the Dodge truck observed in surveillance on July 30), they found that Cooper was at the premises, in a garage converted into an apartment. Cooper said he lived at the address in the apartment. Cooper told the investigators that he knew Bennett.   He invited them inside to discuss the matter.

While investigators were talking to Cooper, they noticed that he was extremely nervous, unable to remain still, and moving around, sitting then standing.   Agents knew that Cooper was an associate of Bennett's, and during surveillance of Bennett on July 30 as detailed above, they had previously observed Bennett meet with Cooper for what appeared to be a drug transaction. Investigator Harville observed two cut corner baggies on the floor of the apartment, and one was tied at the top in a manner used to package drugs.   Investigator Andrew Harville asked Cooper about his drug use, and Cooper admitted that he used meth ice and that he had used it recently.

At that point, Investigator Harville asked Cooper if he had any weapons on his person. He said no, but he had some channel lock plyers in his back pocket, which he removed. Investigator Harville asked Cooper to turn his pockets inside out so they could see that he had no other weapons.   He agreed to do that, and while emptying his pockets, he removed a clear plastic baggie which contained what appeared to be meth ice.   Although he attempted to put the drugs back into his pocket, agents had seen it and he was detained.   Cooper was advised of his rights and he said he understood his rights.   See attached Exhibit A.   He also agreed to waive his rights and he consented to a search of the apartment in writing.   See attached Exhibit B.

Deputies located approximately $2,279 in cash, a glass pipe, a scale and a package of plastic baggies used to package meth were also found.    Cooper told the investigators that at least half the cash was from drug sales.    He claimed that he was self-employed doing carpentry work.    He admitted that he had been buying meth ice from Bennett for 3 months, and that he had obtained two ounces each week.    He said he would meet Bennett in public places for the deal, including the restaurant where agents observed the meeting between him and Bennett. Cooper admitted that he had about five "good customers" who were buying meth ice from him, which he had received from Bennett.    He said one of them bought about an 8-ball every day; and the others bought an 8-ball every two or three days.    He claimed he only had a few people who were buying grams from him.    Cooper told the deputies that after Bennett's arrest, Cooper began to get his meth ice from a subject from Pensacola he identified by a street name. The drugs seized from Cooper tested at the DEA lab as 12 grams of methamphetamine at 80% purity, or 10.2 grams of actual methamphetamine.

## Legal Analysis

**A.   The post-Miranda statement was knowingly and voluntarily made after advice of rights.**

Consensual contact does not require a warrant or advice of rights, and any statements made during consensual contact are not subject to suppression.    Law enforcement officers may, like any other citizen, take advantage of an implied license "to approach a residence by the front path, knock promptly on the door, wait briefly to be received, and then (absent invitation to linger longer) leave."    *Florida v. Jardines*, 569 U.S. 1, 8 (2013). So a police officer not armed with a warrant may approach a home and knock, precisely because that is "no more than any

4

private citizen might do." *Id.* "When used by law enforcement officers to make inquiry of a home's occupants, this widely used investigatory tool is known as a 'knock and talk.'" *United States v. Taylor*, 458 F.3d 1201, 1204 (11th Cir. 2006). "During a 'knock and talk,' officers approach a house with or without probable cause, knock on the door to, for example, question the residence about possible criminal activity there or to try to obtain consent to search." *Kentucky v. King*, 563 U.S. 452, 466-467 (2011). Absent certain coercive tactics which are not alleged in the instant case, this conduct is perfectly legal and implicates no constitutional rights.

Conversations with citizens under these circumstances are not subject to suppression. It is only when a custodial interrogation begins that advice of rights is required. *United States v. Acosta*, 363 F.3d 1141, 1148 (11th Cir. 2004). Custodial interrogation begins when questions are asked by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The Court has refined this question over time to define "custodial" in this sense as "a formal arrest or restraint on freedom of movement of the type associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983); see also *Stansbury v. California*, 511 U.S. 318, 322 (1994); *New York v. Quarles*, 467 U.S. 649, 655 (1984); *United States v. McDowell*, 250 F. 3d 1354, 1362 (11th Cir. 2001). Whether a suspect is "in custody" is an objective inquiry. *J.D.B. v. North Carolina*, 564 U.S. 261, 270 (2011). The court must ask whether a reasonable person would have understood that his freedom of action has been curtailed to the degree associated with formal arrest. *United States v. Luna-Encinas*, 603 F. 3d 876, 881 (11th Cir. 2010). Courts are much less likely to find the circumstances "custodial" when the

5

interrogation occurs in familiar or at least neutral surrounds, such as the suspect's home. *United States v. Brown*, 441 F.3d 1330, 1347 (11th cir. 2006).

   Against this legal backdrop, the Government asserts that Cooper's statements made prior to the time when the drugs fell from his pocket are admissible without the need for Miranda warnings.   Given the allegations in the motion, the Government further asserts that Cooper does not object to the admissibility of these statements as they are not the product of a custodial interrogation.   After the drugs fell from Cooper's pocket, the deputies obtained consent to search Cooper's residence and a written waiver of Cooper's rights.   In his motion, Cooper does not dispute that he was properly advised of his Miranda warnings.   Rather, Cooper claims he had been using drugs prior to the advice of rights and was unable to provide a knowing and voluntary waiver.[1]

   To establish the admissibility of a defendant's post-Miranda statement, the Government need only establish by a preponderance of the evidence that the statement was voluntary. *United States v. Grimes*, 142 F.3d 1342, 1350 (11th Cir. 1998).   In determining whether a

---

[1] Authority cited in Cooper's motion, *Townsend v. Sain*, 372 U.S. 293, 298 & 302 (1963), involved a situation where medical professionals administered the petitioner a drug, hyoscine, which apparently acts as a "truth serum."   The Court held that a confession obtained after the administration of that drug would not be deemed as the "product of a free intellect" which rendered the confession inadmissible.   Other considerations relevant to the admissibility of the petitioner's confession were listed in footnote 4, including "his lack of counsel at the time, his drug addiction, the fact that he was a 'near mental defective,' and his youth and inexperience." *Id*. at 308 n.4.   These facts easily distinguish *Sain* from the instant case.   Cooper was 43 years old and consumed methamphetamine of his own volition.   While he admitted only an 8th grade education, there is nothing in the motion indicating any "mental defect" which would affect his ability to understand his rights and the consequences of waiving them.   Cooper's criminal history relates back to 1989 and includes three felony drug convictions.   Doc. 50 at 9-13, Page ID# 130-134.

waiver of Miranda rights is voluntary, the Court must engage in a two-part inquiry: first, the relinquishment of the right must have been voluntary– the result of a free and deliberate choice rather than intimidation, coercion or deception; and second, the waiver must have been made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.   *United States v. Barbour*, 70 F.3d 580, 585 (11th Cir. 1995).   If the totality of the circumstances surrounding the waiver reveal both "an uncoerced choice and the requisite level of comprehension," the Court may properly conclude that the Miranda rights have been waived.   *Id*.   Only if the totality of the circumstances surrounding the interview reveals an un-coerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.   *Id*.

        In the motion under consideration in this case, the defendant asserts that he was intoxicated and therefore could not knowingly waive his rights to provide a voluntary statement. A confession that "was not product of free will and rationale (sic) intellect" or that was made "when the individual's will was overborne by physical, psychological, or drug-induced means" is inadmissible.   *Parker v. Allen*, 565 F.3d 1258, 1280 (11th Cir. 2009).

        However, evidence of consumption of intoxicating substances requires that the Court evaluate whether the defendant's faculties were **so impaired** that he did not understand what was going on and whether he was coherent when he made the statements.   *United States v. Martin*, 434 F.2d 275, 279 (5th Cir. 1970) (emphasis added).   The mere consumption of intoxicating substances prior to the time of the interview does not automatically establish that a defendant's statements are inadmissible.   In other words, "[i]ntoxication, short of . . . impairment of the will and mind as to make the individual unconscious of the meaning of his words, will not render a

statement or confession inadmissible." *Parker v. Allen*, 565 F.3d 1258, 1280 (11th Cir. 2009),

quoting *Free v. State*, 495 So.2d 1147, 1156 (Ala. Crim. App. 1986).   Such statements will not

be suppressed based upon the mere consumption of alcohol unless the defendant's intoxication is

so severe that he was unaware of his surroundings. *Parker*, 565 F.3d at 1280.

      The motion fails to allege facts that would support this conclusion, as it merely asserts

that at some point prior to the questioning, Cooper had used methamphetamine.   There is no

allegation that the use was immediately prior to the question, that it was within hours of the

questioning, or that it was days before questioning.   The failure of the motion to allege facts

sufficient to support the requested relief is fatal to viability of the motion.   See *United States v.*

*Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2000) ("A motion to suppress must in every critical

respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to

conclude that a substantial claim is presented . . . .   A court need not act upon general or

conclusory assertions. . . .").

      For example, a hotel room alleged in the motion to suppress at issue in the *Cooper* case,

*supra*, claimed that the room was "theirs (the defendants')." The Court held that allegation was

not sufficient to establish that the defendants had a reasonable expectation of privacy in the

premises which were searched.   *Id*.   The Court observed that the motion failed to state facts

demonstrating that the conclusion that the room was "theirs," and therefore it was facially

deficient.   *Id*.   The district court's decision to deny the motion without a hearing was upheld.

*Id*. at 1285.

      Such in the case with the instant motion.   A mere allegation that the defendant had at

some point used drugs before the deputies advised him of his rights is facially insufficient to

require the Court to conduct a hearing.   The Government submits that the motion to suppress the statement and the evidence in the instant case from the encounter on September 11, 2018, is due to be denied on its face.

If the Court deems the motion facially sufficient, the Government expects that the evidence will show that the defendant was coherent at the time of the interview, that he had the ability to answer questions appropriately, and that he was aware of the circumstances surrounding the deputies' presence in his residence as well as the consequences of his statements.   The signed rights waiver, Exhibit A attached hereto, clearly shows that the defendant initialed every paragraph proving that the understood his rights, and his signature appears at the bottom of the form acknowledging his waiver of those rights.   Accordingly, the Government submits that the totality of the evidence will establish that the defendant's post-Miranda statement is admissible in spite of any prior consumption of drugs.

In addition, the Government challenges Cooper's claim in the motion that other evidence seized during the investigation on that date is subject to suppression as tainted by his allegedly inadmissible post-Miranda statement.   As noted above, Cooper invited the deputies into the residence.   In July of 2018, the deputies had observed Cooper meeting with co-defendant Von Clay Bennett during the investigation and they suspected that he was involved with Bennett in drug distribution.[2]   While looking for Bennett and/or Bennett's mother, deputies encountered

---

2 A police officer's unarticulated plan has no relevance to the question of whether a suspect was "in custody" at a particular time.   *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).   The only relevant inquiry, as noted above, is whether a reasonable man in the suspect's position would have understood his situation as "custodial."   *Id*.   The fact that the officers had background information on Cooper which caused them to suspect he had involvement with Bennett is not material to the inquiry at issue in the defendant's motion.

9

Cooper at the residence address, which was the same address listed in the registration for the vehicle he drove when he met with Bennett in the parking lot of the restaurant in July.

After Cooper invited the deputies inside, they observed drug paraphernalia in plain view. These items were not the object of a search at all, let alone an illegal one, as the deputies were lawfully inside the residence and could plainly see the plastic baggie corners.   The deputies immediately recognized as paraphernalia commonly used for packaging and distributing drugs, including methamphetamine.   See *United States v. Smith*, (11th Cir. 2006) ("The 'plain view' doctrine permits a warrantless seizure where (1) an officer is lawfully in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent.") (internal quote marks and citations omitted).

As noted above, there was a separate consent to search which Cooper also signed, attached Exhibit B.   From the time appearing on the forms, Cooper signed the consent form first, at 1:30 p.m.   Cooper signed the rights waiver, Exhibit A, at 1:40 p.m.   The signed rights waiver and the signed consent to search establish strong evidence that the defendant knowingly, voluntarily and intelligently waived his rights.   The post-Miranda statements should be admitted into evidence.

**B.   The consent to search was knowingly and voluntarily given.**

It is well-settled that voluntariness of consent to search is a question of fact to be determined from all the circumstances.   *Schneckloth v. Bustamonte*, 412 U.S. 218, 248-249 (1973).   Because the issue of voluntariness turns of credibility choices, the appellate court does not overturn the trial judges' finding on voluntariness of consent unless it is clearly erroneous.

*United States v. Garcia*, 890 F.2d 355, 359 (11th Cir. 1989).   For consent to be deemed voluntary, it must be the product of "an essentially free and unconstrained choice."   *Hudson v. Hall*, 231 F.3d 1289, 1298 (11th Cir. 2000).   The court must scrutinize the facts and strike a balance the defendant's right to be free from coercive conduct against the legitimate need of the government to conduct lawful searches.   *Garcia*, 890 F.2d at 360.   In making such a determination, the court should review the undisputed facts which describe the circumstances under which the defendant consented to the search and apply the law to those facts.   *Id*.   This inquiry is factual and depends on the totality of the circumstances.   *United States v. Simms*, 385 F.3d 1247, 1355 (11th Cir. 2004).    In making this determination, the Court should look at several indicators, including the presence of coercive police procedures, the extent of the defendant's cooperation with the officer, the defendant's awareness of his right to refuse consent, the defendant's education and intelligence, and the defendant's belief that no incriminating evidence will be found.   *Id*., citing *United States v. Purcell*, 236 F.3d 1274, 1281 (11th Cir. 2001).

The Government initially submits that the defendant's motion does not specify evidence he seeks to suppress as the result of the consent search of the residence, and as a result, the motion is facially deficient.   As such, the motion should be denied on its face.   See *Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2000) ("A motion to suppress must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented . . . .   A court need not act upon general or conclusory assertions. . . .").

In the event that the Court deems the motion sufficient, the Government again submits that Cooper voluntarily, by consent, authorized the deputies to a search of his premises.   As

established above, there is no allegation in the motion that Cooper suffered from a severe impairment due to voluntary intoxication.    If the Court deems the consent search of the residence as fruit of the alleged Miranda violation, the Government would be required to establish that the consent was voluntarily given, and that it was not a product of the illegal seizure.    *United States v. Santa*, 236 F.3d 662, 676 (11th Cir. 2000).    To make this determination, the court should consider whether the voluntary consent was in temporal proximity to the alleged illegal conduct by the police, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct.    *Brown v. Illinois*, 422 U.S. 590, 603-04.(1975).    Another factor is whether the defendant was given appreciable time to reflect upon whether to given consent.    *United States v. Valdez*, 931 F.2d 1448, 1452 (11th Cir. 1991).

In the instant case, the officers presented Cooper with a consent to search form, which he signed.    Exhibit B.    The form reflects that Cooper told the agents he had an 8th grade education, which they noted at the top of the form.    The Government submits that the consent was knowingly and voluntarily given and sufficiently attenuated from any issue resulting from the alleged Miranda violation.

## II.    November 4, 2018, Terry Pat and Seizure

### Anticipated Facts

Based upon a review of the relevant reports, the Government expects that the evidence will show that on November 4, 2018, shortly after midnight, Cooper was again encountered by law enforcement officers, this time in Bay Minette.    Bay Minette Police Officer Cpl. Jimmy

12

Stracener was on routine patrol in the area of government housing located at 406 Martin Luther
King Jr. Boulevard when he observed a red Ford Focus parked in front of that address.   Bay
Minette police had been asked by officials at the housing authority to make contact with
individuals who are loitering on their property and who are not on the leases.   The housing
authority had requested that officers give a warning for trespassing to any subjects found on the
property without permission.   The housing authority management had provided the police
department with a list of the names of the lawful tenants on their properties to facilitate this
request.

On this occasion, Cpl. Stracener observed that a white male was seated in the Ford.   He
knew that the residence at 406 was leased to a tenant (C. G.), due to his responding to prior calls
for service at that address.   Cpl. Stracener stopped and made contact with the subject in the
Ford, who was identified as the defendant, Cooper.   Cpl. Stracener asked Cooper about his
presence at the address, and he claimed he lived in apartment 406B.   Cpl. Stracener said he
knew who lived there and asked Cooper for that person's name.   Cooper said he only knew her
as "DeeDee."   Cpl. Stracener confirmed on the tenant list that C. G. was the tenant at 406, and
that Cooper was not listed.

During this conversation with Cooper, Cpl. Stracener observed that Cooper was
extremely nervous and fidgety.   He asked Cooper to step out of the vehicle for a pat-down for
weapons.   Cpl. Stracener felt two bags in his right front pocket.   He asked Cooper about the
bags, and Cooper immediately stiffened up.   According to the report, Cpl. Stracener believed
that Cooper might have narcotics in his pocket.   He next questioned Cooper about his arrest
history. Cooper admitted he had a previous arrest for manufacturing a controlled substance.

At this time, Cpl. Stracener extracted the bags from Cooper's pocket, and they appeared to contain methamphetamine. Cooper immediately claimed that he pants he was wearing were not his pants. Then he claimed the officer planted the items in his pocket. The officer arrested Cooper for possession with intent to distribute a controlled substance. The drugs were submitted to the DEA laboratory for analysis, and tested at 20.91 grams of methamphetamine at 82% purity, or 17.14 grams of actual methamphetamine.

## Legal Analysis

### 1. The Motion to Suppress is facially deficient.

As an initial matter, the Government observes that the motion fails to identify with specificity which evidence is sought to be suppressed and on what specific grounds. As noted above, the Government submits that a motion failing to state these grounds is insufficient on its face to support a need for a hearing, and it is due to be denied without a hearing. See *Cooper*, 203 F.3d at 1284 (a motion to suppress must be sufficiently specific, not making mere conclusory allegations, citing *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir.1985)).

Specifically, the Government submits that the motion fails to establish that Cooper has a reasonable expectation of privacy in the thing searched (the pants), as he immediately exclaimed that the pants were not his. The motion itself is devoid of any allegation that Cooper has a constitutionally protected reasonable expectation of privacy in the object of the search. Cooper did not and does not now claim that he owned the pants. Mere legitimate presence on "searched premises" by invitation or otherwise does not create a protectable expectation giving rise to standing to contest a search. *United States v. Meyer*, 656 F.2d 979, 981 (5th Cir. Unit B 1981).

While former caselaw recognized automatic standing, that rule has been abolished in this district

for some time.   See *United States v. Hawkins*, 681 F.2d 1343, 1345 (11th Cir. 1982), citing

*Rawlings v. Kentucky*, 448 U.S. 98 (1980).   In *Rakas v. Illinois*, 439 U.S. 128, 139 (1978), the

Court described the standing analysis as artificial and concluded that "the better analysis

forthrightly focuses on the extent to a particular defendant's rights under the Fourth Amendment,

rather than on any theoretically separate, but invariably intertwined concept of standing."   The

relevant inquiry has become whether the defendant has a legitimate expectation of privacy.

*Hawkins*, 681 F.2d at 1345.   And in the Eleventh Circuit, "disclaiming ownership or knowledge

of an item ends a legitimate expectation of privacy in that item."   *Id*., citing *United States v.*

*Colbert*, 474 F.2d 174, 177 (5th Cir. 1973 (defendant were found to have no reasonable

expectation of privacy in briefcases they had been carrying when they disclaimed any interest in

the briefcases and began to walk away from them); *United States v. Canady*, 615 F.2d 694, 697

(5th Cir. 1980) (repeated disclaimers of ownership of a suitcase by the defendant were held to

preclude any7 legitimate expectation of privacy in the suitcase or its contents); *United States v.*

*Pirolli*, 673 F.2d 1200 (11th Cir. 1982) (defendant disavowed any knowledge of bags later found

to contain cocaine so he could not contest the search); *United States v. Bush*, 623 F.2d 388 (5th

Cir. 1980) (defendant threw a bag of cocaine on the ground and fled when addressed by a DEA

agent and he was not able to assert a reasonable expectation of property to contest the search).

The Court further conceded that its ruling "did not mean that a defendant necessarily

must claim a property interest in the article at the time of the search, or that every type of

statement disclaiming ownership of an article forecloses the establishment of a reasonable

expectation of privacy therein."   *Id*. at 1346.   The Court explained than an assertion of

ownership is not, but itself, dispositive of the right to claim the protection of the fourth amendment, it follows that a disclaimer of ownership, while indeed strong indication that a defendant does not expect the article to be free from government intrusion, is not necessarily the hallmark for deciding the substance of a fourth amendment claim." Id.

The facts underlying the *Hawkins* case reflected that the defense motion sought to suppress evidence seized from a suitcase which agents saw in the possession of a porter who was with a woman at the airport.   Officers observed as the woman and the porter approached Hawkins, who began to make hand signals in the woman's direction.   The woman then picked up the suitcase and began to walk away but stopped and dropped the suitcase when a second officer identified himself to her.   Hawkins then became disruptive to the point of disorderly conduct, yelling that it was not his suitcase and demanding that the woman get away from him. Both Hawkins and the woman were taken into custody and Hawkins continued to disclaim knowledge of the woman or the suitcase.   The suitcase was found to contain heroin.   *Id*. at 1344.

In its analysis of reasonable expectation of privacy in the item searched, the *Hawkins* Count observed that "Hawkins' unsolicited and violent protests that he knew nothing about the woman or the suitcase are so inconsistent with a claim of privacy interest in the suitcase that he cannot later successfully assert that claim."   *Id*. at 1346.

There are other cases where a denial of ownership of property defeated an attempt to claim a reasonable expectation in such property:   *United States v. Thomas*, 12 F.3d 1350, 1366 (5th Cir. 1994) (where defendant denied ownership of a camera bag found in his car, the property was deemed abandoned and any privacy expectation was relinquished); *United States v. Leshuk*,

16

65 F.3d 1105, 1106, 1110-11 (4th Cir. 1995) (reasonable expectation of privacy relinquished when the defendant denied ownership of items found in a field next to the defendant); *United States v. Washington*, 146 F.3d 536, 538 (8th Cir. 1998) (warrantless search of bag defendant repeatedly denied owning was valid because voluntary abandonment of property makes the defendant ineligible to context the search).

There is no dispute that Cooper was in possession of the pants because he was wearing them. But mere possession of property is not sufficient to establish a legitimate expectation of privacy, as noted in the authorities cited above. The Government submits that allegations to establish standing are necessary in order for Cooper to benefit from the protections of the Fourth Amendment. *Lenz v. Winburn*, 51 F.3d 1540, 1549 (11th Cir. 1995), *citing Oliver v. United States*, 466 U.S. 170, 177 (1984). In *United States v. Chavers*, 1999WL 35794045 (S. D. Fla. September 22, 1999), the magistrate judge denied a motion to suppress the search of a jacket which the defendant had been holding in his hand when the police encountered him and asked that he put it down. Chavers matched the description of a robbery suspect which had just occurred in the area. Chavers filed a motion to suppress the seizure and search of the jacket, in which the officers found cocaine. Chavers' suppression motion alleged that he physically possessed the jacket in his hand before the police instructed him to put it down, so he claimed standing to object to the search of the jacket. When the police found the cocaine, Chavers volunteered that the jacket was not his and that he had just found it. The magistrate judge examined the *Hawkins* case and the cases cited in the paragraph above to analyze relevant issues of abandonment and reasonable expectation of privacy in property disowned by a defendant and addressed the issue of involuntary abandonment which occurs when, for example, there was an

17

illegal search of luggage prior to the defendant's abandonment of it, citing *Floyd v. United States*, 677 F. Supp. 1083 (D. Col. 1987).

In its analysis, the magistrate judge found that the initial police encounter with Chavers was reasonable based upon *Terry v. Ohio*, 392 U.S. 1 (1968). Specifically, the magistrate judge found that the police had articulable suspicion to approach and question Chavers who matched the description of the robbery suspect and a brief detention was reasonable.   As to the question of disclaimer or abandonment for Fourth Amendment purposes, the only evidence was that Chavers has holding the jacket in a crumpled ball fashion as the officers approached him.   He put it down when directed and within a few minutes of the discovery of the cocaine and not in response to any police questioning, Chavers volunteered that the jacket was not his and that he had just found it.   The magistrate judge concluded that Chavers' words and actions, along with the observations of the police witnesses, constituted a disclaimer of any privacy interest in the jacket and that Chavers failed to meet his burden to establish a reasonable expectation of privacy in the jacket.   *Id*. at *6.

So it is in the instant case.   Given the circumstances cited in Cooper's motion and those summarized above in the Government's version of the anticipated evidence, the police encounter with Cooper was entirely reasonable under *Terry*, and that issue is discussed in detail below. Under these circumstances, Cooper's motion does not assert a reasonable expectation of privacy in the seized items.   It is due to be denied without a hearing.

**2.   The anticipated facts establish Reasonable Suspicion, the "Plain Feel" Exception, and Probable Cause to Search.**

If the Court finds that the motion is facially sufficient, the Government again submits it is

18

due to be denied.    In *Terry v. Ohio*, 392 U.S. 1, 26-27 (1968), the Supreme Court recognized that there is a narrowly drawn exception which permits a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.    In determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or hunch, but to the specific reasonable inference which he is entitled to draw from the facts in light of his experience.    *Id.* This is the so-called "Terry pat."    The purpose of a Terry pat-down search is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence. *United States v. Walker*, 65 F. Supp. 3d 1385 (M. D. Ga. 2014), citing *Adams v. Williams*, 407 U.S. 143, 145-46 (1972).

In *Minnesota v. Dickerson*, 508 U.S. 366, 375-376 (1993), the Supreme Court further recognized that nonthreatening contraband detected through sense of touch during a pat down may be seized.    "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the pain-view context."    *Id.*

As applied to the facts in the instant case, the officer was on routine patrol in an area where the property owner had made prior complaints to the police about non-residents loitering on the premises, alleging that there was a history of people other than tenants unlawfully on the premises.    Cooper lied to the officer about being a lawful resident at the apartment where he was

sitting in a vehicle parked out front of an apartment.   In this investigation, the officer was

obliged to question the defendant about his presence on the property and while so doing, he was

entitled to ask Cooper to step out of the vehicle and to conduct a Terry pat-down for safety's

sake.   See *United States v. Purcell*, 236 F.3d, 1274, 1277 (11th Cir. 2001); *Maryland v. Wilson*,

519 U.S. 408, 410 (1997): *Pennsylvania v. Mimms*, 434 U.S. 106, 110-112 (1997) (during a

lawful traffic stop, officers may take steps that are reasonably necessary to protect their personal

safety, including requiring the driver to exit the vehicle "as a matter of course.").   When the

officer felt the two bags in Cooper's pocket, the officer simultaneously questioned Cooper about

the bags.   The police report reflects that Cooper's reaction was to "stiffen up," and that Cooper

also admitted that he had criminal history for drugs.   The totality of the circumstances in this

case establish that the officer had probable cause to remove the bags from the pants pocket.

"In dealing with probable cause . . ., we deal with probabilities.   These are not technical;

they are the factual and practical considerations of everyday life on which reasonable and

prudent men, not legal technicians, act . . . . 'The substance of all the definitions' of probable

cause 'is a reasonable ground for belief of guilt.'"   *United States v. Smith*, 459 F.3d 1276, 1291

(11th Cir. 2006), citing *Brinegar v. United States*, 338 U.S. 160, 175 (1949).   Probable cause

must not be judged with clinical detachment, but with a commonsense view to the realities of

normal life.   *United States v. Herzbrum*, 723 F.2d 773, 775 (11th Cir. 1984).   There is no rule

of law which requires an officer to know with absolute certainty that all elements of a putative

crime have been completed when he seizes an article which reasonably appears to be

incriminating evidence.   *United States v. Slocum*, 708 F.2d 587, 605 (11th Cir. 1983).

Based upon information in the report, there is no indication that the officer further

manipulated the bags in the pants pocket in contravention of *Hernandez's* "plain feel" exception. Instead, he questioned Cooper about the bags, observed his Cooper's reaction, and discovered that Cooper had criminal history for drugs.   Cooper's false statement claiming to be a resident and the history of prior calls to the police for assistance at the premises add to the facts constituting probable cause for the officer to remove the bags.   The situation is similar to that recounted in *United States v. Smith*, 694 F. Supp. 2d 1242 (M. D. Ala. 2009).

There, the officer smelled marijuana and was aware that Smith was armed.   During a pat-down, the video showed that the officer began to manipulate the item in Smith's pants pocket.   However, the officer questioned Smith about the odor of marijuana rather than removing the item from Smith's pocket, and Smith attempted to run.   He was apprehended after only a few steps.   The Court found probable cause to arrest Smith and that the item in his pocket (bags containing crack cocaine, marijuana and scales) was removed after a search subsequent to his arrest.   *Id.* at 1252.   Although the facts in *Smith* showed probable cause to arrest Smith and to conduct the search of Smith's pocket thereafter, the point for purposes of the instant analysis is that Smith's subsequent actions affected the reasonableness of the officer's actions.

To summarize the circumstances in the instant case, Cooper had lied to the officer about being a lawful resident at the apartment.   The officer was alone in an unsecured area where there had been numerous prior calls for service, and Cooper was in a vehicle.   Upon patting Cooper down, the officer felt the bags in his pocket which he believed to be contraband.   The officer did not remove them at that time, but asked Cooper about them.   Cooper reacted in a way that contributed to the officer's belief that the bags did contain contraband by "stiffening," and

admitted criminal history involving drugs.   These additional facts established a "fair

probability" that the items in the pants pocket were contraband and that a crime was being

committed, thus constituting probable cause for the officer to remove the bags from the pocket.

Accordingly, the officer's actions in seizing the drugs from the pants pocket did not offend the

Constitution and the methamphetamine in the bags is admissible evidence.[3]

WHEREFORE, the United States files its response in opposition to the defendant's

motion to suppress statements and evidence.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

By: *s/Gloria A. Bedwell*
Gloria A. Bedwell (BEDWG1000)
Assistant United States Attorney
United States Attorney's Office
63 South Royal Street, Suite 600
Mobile, Alabama      36602
Telephone: (251) 441-5845
Facsimile:   (251) 441-5277
E-mail: gloria.bedwell@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that December 9, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney for the defendant.

---

3  The motion also seeks to suppress "all statements" resulting from the seizure of the methamphetamine from the pants pocket on this occasion.   No mention is made of any statements sought to be suppressed, nor are any grounds for suppression identified.   The Government cannot respond to this assertion without more specific information.   See *Cooper*, 203 F.3d at 1284 (a motion to suppress must be sufficiently specific, not making mere conclusory allegations).

_s/Gloria A. Bedwell_
Gloria A. Bedwell
Assistant United States Attorney